# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs February 23, 2015

### IN RE AYRIS R.[1]

**Appeal from the Juvenile Court for Washington County**
**No. 14385    Hon. Robert G. Lincoln, Judge**

---

### No. E2014-01950-COA-R3-PT-FILED-APRIL 23, 2015

---

This is a termination of parental rights appeal brought by the putative father.  The trial court found clear and convincing evidence to support termination of the putative father's parental rights because he failed to establish paternity.  The court also found that termination of the putative father's parental rights was in the best interest of the child.  The putative father appeals the best interest finding.  We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Joseph O. McAfee, Greeneville, Tennessee, for the appellant, Jonathan L.

Herbert H. Slatery, III, Attorney General and Reporter; Andree S. Blumstein, Solicitor General; and Kathryn R. Baker and Alexander S. Rieger, Assistant Attorneys General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

---

[1] This court has a policy of protecting the identify of children in parental rights termination cases by initializing the last name of the parties.

1

## OPINION

## I. BACKGROUND

Ayris R. ("the Child") was born to Amber R. ("Mother") and Jonathan L. ("Putative Father") in September 2013. Putative Father was incarcerated at the time of the Child's birth. The Child was born at home and then transported to Johnson City Medical Center, where it was discovered that she had been exposed in utero to Subutex, THC, and Cocaine. The Child, who was born with a cleft palate, had difficulty eating, and was diagnosed with Pierre Robin Syndrome, was placed in the neonatal intensive care unit. The Tennessee Department of Children's Services ("DCS") took custody of the Child following her release from the hospital in October 2013. She was later adjudicated as severely abused as a result of Mother's drug use during pregnancy. Mother and Putative Father (collectively "the Parents") later stipulated that the Child was dependent and neglected, as evidenced by Mother's drug use and Putative Father's incarceration.

The Parents were not married at the time of the Child's birth, and Putative Father's name was not listed on the birth certificate. He later took a DNA test, the results of which were never disclosed to DCS. Other than taking the DNA test, he took no further steps to establish his paternity of the Child. Once released in March 2014, DCS arranged visitation between the Child and Putative Father on a weekly basis.

DCS filed a petition to terminate Putative Father's parental rights to the Child on June 10, 2014.[2] DCS alleged that termination of his parental rights was warranted pursuant to Tennessee Code Annotated sections 36-1-117(c) and 36-1-113(g)(9) because he had failed to establish his paternity. A hearing on the petition was held in September 2014. Putative Father was present but did not testify.

The majority of the testimony presented at the hearing related to Mother's struggle with drug addiction. However, Katie Wilhoit, the DCS case manager assigned to the Child's case, testified that the Child was placed in a two-parent home with a stay-at-home foster father. She believed that the Child had bonded with the foster parents, who had addressed her unique medical needs.

Ms. Wilhoit testified that the Parents lived together but were not married. She recalled that Putative Father was not listed on the Child's birth certificate but that Mother identified him as the biological father. She stated that she searched the Putative Father Registry before filing the termination petition and did not find any claims for paternity of the Child. She related that Putative Father had not legitimated the Child or even filed a petition for paternity. She opined that he had not manifested willingness and an ability to

---

[2] DCS also sought termination of Mother's parental rights to the Child. She is not a party to this appeal.

2

take custody of the Child and that placing the Child with him would pose a substantial risk of harm to the Child's physical or psychological welfare. She conceded that his home was physically safe, that he completed a parenting assessment, and that he had passed four drug screens. However, she stated that he continued to abuse alcohol and that he lived with Mother, who continued to abuse drugs.

Ms. Wilhoit testified that Putative Father had not remitted child support, despite having access to money. She recalled that he only visited the Child on six occasions from March 19, 2014, until the hearing on September 29, 2014, despite her willingness to arrange visitation on a weekly basis. She acknowledged that he brought clothing, diapers, wipes, and toys for the Child when he visited her. She agreed that he was able to engage the Child in play and that he was attentive to her physical needs.

Ms. Wilhoit testified that Putative Father's parental rights to the Child's half-sister, Emma J., had been terminated in May 2014. The order terminating his parental rights reflected that Emma J. was adjudicated as dependent and neglected and that Putative Father abandoned the child by failing to visit, that he failed to substantially comply with the requirements of a permanency plan, that the conditions which led to removal persisted, and that he failed to establish his paternity of the child.

Following the presentation of the above evidence, the trial court held that DCS had presented clear and convincing evidence that termination of Putative Father's parental rights was appropriate based upon his failure to establish his paternity of the Child. The court further held that termination of his parental rights was in the best interest of the Child. This timely appeal followed.

## II. ISSUE

Whether clear and convincing evidence supports the court's finding that termination of Putative Father's parental rights was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v.*

*Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1)     [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2)     [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

4

A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV. DISCUSSION

In this case, Putative Father does not challenge the trial court's ruling concerning the statutory ground for termination. Although we have reviewed the record and the proof presented therein, we will not discuss the issue. It suffices us to say that this court is satisfied that the trial court's ruling as to the statutory ground for termination is supported by clear and convincing evidence. Having concluded that there was clear and convincing evidence supporting the statutory ground to terminate Putative Father's parental rights, we must consider whether termination of his parental rights was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

5

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[3]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict,

[3] *In re Kaliyah S.*, — S.W.3d —, No. E2013-01352-SC-R11-PT, 2015 WL 273659, at *18 (Tenn. Jan. 22, 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

A number of the best interest factors weigh against Putative Father. He had not made the adjustment of circumstances necessary to provide a stable home for the Child as evidenced by his living arrangement with Mother. Tenn. Code Ann. § 36-1-113(i)(1). He failed to engage in more than token visitation or to otherwise maintain a relationship with the Child. Tenn. Code Ann. § 36-1-113(i)(3), (4). The Child resides in a safe and stable foster home. Tenn. Code Ann. § 36-1-113(i)(5). Putative Father's parental rights had been terminated relative to another child based upon an initial finding of dependency and neglect. Tenn. Code Ann. § 36-1-113(i)(6). Questions remain as to whether he can provide a safe and stable home when he continued to live with Mother. Tenn. Code Ann. § 36-1-113(i)(7). He never remitted child support. Tenn. Code Ann. § 36-1-113(i)(9).

We acknowledge that Putative Father visited the Child and that his visits consisted of the same activities provided by the foster parents, namely engaging the Child in play and taking care of her physical needs. However, he failed to take advantage of additional opportunities for visitation and never bothered to establish his paternity of the Child. The Child needs permanency and stability, which she can receive from the foster parents who have successfully parented her while Putative Father allowed her to languish in custody. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Putative Father's parental rights was in the best interest of the Child. Accordingly, we affirm the decision of the trial court.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Jonathan L.

_____
JOHN W. McCLARTY, JUDGE